**No. 14-4088**

---

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

DINO RIKOS, ET AL.,
*Plaintiffs – Appellees*,
v.
THE PROCTER & GAMBLE COMPANY
*Defendant – Appellant.*

_____

On Appeal from the United States District Court
For the Southern District of Ohio, Western Division
Case No. 1:11-cv-0226

_____

**OPENING BRIEF FOR APPELLANT
THE PROCTER & GAMBLE COMPANY**

_____

D. Jeffrey Ireland
FARUKI IRELAND & COX P.L.L.
201 East Fifth Street, Suite 1420
Cincinnati, OH  45202
(513) 632-0300

Joanne Lichtman
BAKER & HOSTETLER LLP
3200 PNC Center
1900 East 9th Street
Cleveland, OH  44114
(216) 621-0200

Brian J. Murray
JONES DAY
77 West Wacker
Chicago, IL  60601-1692
(312) 269-1570

Chad A. Readler
Rachel Bloomekatz
JONES DAY
325 John H. McConnell Blvd.
Suite 600
Columbus, OH  43215
(614) 469-3939

*Attorneys for Appellant, The Procter & Gamble Company*

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

DINO RIKOS, et al.

v.

THE PROCTER & GAMBLE COMPANY

## DISCLOSURE OF CORPORATE AFFILIATIONS
## AND FINANCIAL INTEREST

Pursuant to 6th Cir. R. 26.1, ____The Procter & Gamble Company____

*Name of Party*

makes the following disclosure:

  1. Is said party a subsidiary or affiliate of a publicly owned corporation?

If Yes, list below the identity of the parent corporation or affiliate and the

relationship between it and the named party:

No.

  2. Is there a publicly owned corporation, not a party to the appeal, that

has a financial interest in the outcome? If yes, list the identity of such corporation

and the nature of the financial interest:

No.

____s/ Brian J. Murray____  ____01/20/2015____
*Signature of Counsel*      *Date*

# TABLE OF CONTENTS

**Page**

STATEMENT IN SUPPORT OF ORAL ARGUMENT .......................................1

STATEMENT OF JURISDICTION...........................................................1

STATEMENT OF THE ISSUES...............................................................2

INTRODUCTION ...............................................................................3

STATEMENT OF THE CASE..................................................................7

    I.     ALIGN.......................................................................................7

         A.    The Demonstrated Benefits Of Align .......................................7

         B.    Product Marketing And Advertising........................................11

         C.    Many Consumers Purchased Align Based On Considerations Other Than Advertising ...................................12

    II.    THE DISTRICT COURT CERTIFIED FIVE SEPARATE CLASSES BASED ON PLAINTIFFS' UNSUPPORTED ALLEGATION THAT ALIGN DOES NOT WORK FOR A SINGLE PERSON ..........................................................................14

SUMMARY OF THE ARGUMENT ........................................................16

STANDARD OF REVIEW ...................................................................21

ARGUMENT ...................................................................................23

    I.     THE DISTRICT COURT FAILED TO RIGOROUSLY ANALYZE WHETHER PLAINTIFFS HAD IN FACT PROVEN COMMONALITY AND TYPICALITY, AS REQUIRED BY RULE 23(A) ..........................................................23

         A.    Because Plaintiffs Failed To Show That Align Works For No One, There Is No Common Question Unifying The Class ................................................................................23

         B.    The Class Representatives' Claims Are Not Typical Given P&G's Proof That Align Works For Many Consumers................................................................................30

# TABLE OF CONTENTS
(continued)

**Page**

II.    WITHOUT SCRUTINIZING THE EVIDENCE, THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT COMMON ISSUES PREDOMINATE, AS REQUIRED BY RULE 23(B)(3)..................................................................32

    A.    Record Evidence Demonstrates That Injury Cannot Be Shown On A Classwide Basis Because Align Is Effective For Many Class Members.........................................................33

    B.    The District Erroneously Presumed Classwide Reliance And Causation In The Face Of Contrary, Uncontroverted Evidence....................................................................................38

    C.    The District Failed To Scrutinize Plaintiffs' Damages Model, In Violation Of *Comcast v. Behrend*............................43

III.    THE DISTRICT COURT'S CERTIFICATION OF OVERLY BROAD CLASSES RESULTS IN A VIOLATION OF ARTICLE III STANDING.................................................................45

IV.    THE DISTRICT COURT CERTIFIED FIVE CLASSES THAT ARE NOT ASCERTAINABLE BECAUSE THERE IS NO RELIABLE AND FEASIBLE METHOD FOR IDENTIFYING CLASS MEMBERS.......................................................................50

CONCLUSION........................................................................................55

CERTIFICATE OF COMPLIANCE...................................................56

# TABLE OF AUTHORITIES

**Page**

CASES

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997)........................................................................18, 19, 32, 47

*Avery v. State Farm Mut. Auto Ins. Co.*,
835 N.E.2d 801 (Ill. 2005)..........................................................................39

*Avritt v. Reliastar Life Ins. Co.*,
615 F.3d 1023 (8th Cir. 2010) ....................................................................48

*Barney v. Holzer Clinic, Ltd.*,
110 F.3d 1207 (6th Cir. 1997) ....................................................................46

*Bumpers v. Cmty Bank of N. Va.*,
747 S.E.2d 220 (N.C. 2013) ........................................................................38

*Bussey v. Macon Cnty. Greyhound Park, Inc.*,
562 Fed. App'x 782 (11th Cir. 2014) ..........................................................46

*Cabral v. Supple, LLC*,
No. ED 12-00085, 2013 U.S. Dist. LEXIS 184170
(C.D. Cal., Feb. 14, 2013)............................................................................34

*Caldera v. J.M. Smucker Co.*,
No. CV 12-4936, 2014 U.S. Dist. LEXIS 53912
(C.D. Cal. Apr. 15, 2014) ............................................................................44

*Campion v. Old Republic Home Prot. Co.*,
272 F.R.D. 517 (S.D. Cal. 2011) ...........................................................38, 42

*Carrera v. Bayer Corp.*,
727 F.3d 300 (3d Cir. 2013) .................................................................passim

*Chieftain Royalty Co. v. XTO Energy Inc*,
   528 Fed. App'x 938 (10th Cir. 2013) ................................................46

*Clark v. Experian Info. Solutions, Inc.*,
   256 Fed. App'x 818 (7th Cir. 2007) ................................................42

*Comcast Corp. v. Behrend*,
   133 S. Ct. 1426 (2013)......................................................passim

*Denney v. Deutsche Bank AG*,
   443 F.3d 253 (2d Cir. 2006) ......................................................19, 49

*Fitzpatrick v. Gen. Mills, Inc.*,
   263 F.R.D. 687 (S.D. Fla. 2010)......................................................17

*Gen. Tel. Co. v. Falcon*,
   457 U.S. 147 (1982)..........................................................6, 7, 24, 30

*Gilroy v. Ameriquest Mortg. Co.*,
   No. 07-cv-0074, 2009 U.S. Dist. LEXIS 13306
   (D.N.H. Feb. 20, 2009) ......................................................39

*Gonzalez v. Procter & Gamble Co.*,
   247 F.R.D. 616 (S.D. Cal. 2007) ......................................................39

*Gooch v. Life Investors Ins. Co. of Am.*,
   672 F.3d 402 (6th Cir. 2012) ......................................................6, 22, 27

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   134 S. Ct. 2398 (2014)......................................................passim

*Halvorson v. Auto-Owners Ins. Co.*,
   718 F.3d 773 (8th Cir. 2013) ......................................................49

*Hayes v. Wal-Mart Stores, Inc.*,
   725 F.3d 349 (3d Cir. 2013) ......................................................50, 53

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ......................................................30, 31, 40

iv

*In re Clorox Consumer Litig.*,
  301 F.R.D. 436 (N.D. Cal. 2014)....................................................54

*In re Deepwater Horizon*,
  739 F.3d 790 (5th Cir. 2014) ......................................................49

*In re Hydrogen Peroxide Antitrust Litig.*,
  552 F.3d 305 (3d Cir. 2008) ........................................................22

*In re POM Wonderful LLC*,
  No. ML 10-02199, 2014 U.S. Dist. LEXIS 40415
  (C.D. Cal. Mar. 25, 2014)............................................................44

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ........................................................49

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
  725 F.3d 244 (D.C. Cir. 2013)...............................................passim

*In re Whirlpool*,
  772 F.3d 838 (6th Cir. 2013) ..........................................27, 28, 45

*Johnson v. Gen. Mills, Inc.*,
  275 F.R.D. 282 (C.D. Cal. 2011)..................................................17

*Karhu v. Vital Pharms., Inc.*,
  No. 13-60768, 2014 U.S. Dist. LEXIS 26756
  (S.D. Fla., Mar. 3, 2014)..............................................................54

*Kohen v. Pac. Invest. Mgmt. Co.*,
  571 F.3d 672 (7th Cir. 2009) ..................................................19, 46

*Langendorf v. Skinnygirl Cocktails, LLC*,
  No. 11-cv-7060, 2014 U.S. Dist. LEXIS 154444
  (N.D. Ill. Oct. 30, 2014)...............................................................41

*Loreto v. Procter & Gamble Co.*,
  No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752
  (S.D. Ohio Nov. 15, 2013)......................................................46, 49

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .......................................................................47

*Marcus v. BMW of N. Am., LLC*,
   687 F.3d 583 (3d Cir. 2012) ..........................................................51

*Miami Auto. Retail, Inc. v. Baldwin*,
   97 So. 3d 846 (Fla. 3d Dist. Ct. App. 2012) ..................................39

*Minkler v. Kramer Labs., Inc.*,
   No. CV 12-9421, 2013 U.S. Dist. LEXIS 90651
   (C.D. Cal. Mar. 1, 2013) .................................................................40

*Oshana v. Coca-Cola Co.*,
   225 F.R.D. 575 (N.D. Ill. 2005) ......................................................39

*Parko v. Shell Oil Co.*,
   739 F.3d 1083 (7th Cir. 2014) ......................................34, 35, 36, 37

*Phillips v. Philip Morris Cos.*,
   298 F.R.D. 355 (N.D. Ohio 2014) .......................................28, 34, 42

*Pilgrim v. Universal Health Card, LLC*,
   660 F.3d 943 (6th Cir. 2011) ...................................................passim

*Romberio v. UNUMProvident Corp.*,
   385 Fed. App'x 423 (6th Cir. 2009) .........................................21, 50

*Sethavanish v. ZonePerfect Nutrition Co.*,
   No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600
   (N.D. Cal., Feb. 13, 2014) ..............................................................54

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ...................................................21, 23, 38

*Sutton v. St. Jude Med. S.C., Inc.*,
   419 F.3d 568 (6th Cir. 2005) ..........................................................48

*Vasquez v. Superior Court*,
   484 P.2d 964 (Cal. 1971) ...................................................................42

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..............................................................passim

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) ......................................................17

*Williams v. Beechnut Nutrition Corp.*,
   185 Cal. App. 3d 135 (1986) .............................................................38

*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) .....................................................passim

## STATUTES

28 U.S.C. § 1292(e) ..................................................................................1

28 U.S.C. § 1332(d)(2)..............................................................................1

California Consumers Legal Remedies Act,
   Cal. Civ. Code § 1750 et seq. ............................................................38

California Unfair Competition Law,
   Cal. Bus. & Prof. Code § 17200 ..................................................39, 42

Florida Deceptive and Unfair Trade Practices Act,
   Fla. Stat. § 501.201 et seq..................................................................39

Illinois Consumer Fraud and Deceptive Business Practices Act,
   815 Ill. Comp. Stat. 505/1 et seq. ................................................39, 42

North Carolina Unfair and Deceptive Trade Practices Act
   N.C. Gen. Stat. § 75-1.1............................................................38, 39

## OTHER AUTHORITIES

Fed. R. App. P. 5 ......................................................................................1

Fed. R. Civ. P. 23 ............................................................passim

1 Herbert B. Newberg and Alba Conte, Newberg on
    Class Actions (3d ed. 1992) ...............................................30

William B. Rubenstein, Newberg on Class Actions
    (5th ed. 2011). ...................................................................50

C. Wright & A. Miller, *Fed. Prac. & Procedure*, § 1764 at n. 21.1
    (Supp. 1982) ..................................................................30, 31

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

This appeal presents important questions concerning the certification of five statewide classes. Oral argument will assist the Court in interpreting and applying new Supreme Court precedents regarding class certification. Specifically, a critical Supreme Court class action opinion issued after the District Court's decision, *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398 (2014), has not yet been addressed by this Court. Oral argument will also assist in explaining the evidence in the record, including the testimony of several experts. Accordingly, oral argument will aid the Court in its decisional process.

## STATEMENT OF JURISDICTION

The District Court had subject-matter jurisdiction based on diversity under the Class Action Fairness Act. *See* 28 U.S.C. § 1332(d)(2); (SAC, RE 85, Page ID # 963). The District Court granted Plaintiffs' motion for class certification in an order and opinion filed on June 19, 2014. (Order, RE 140, Page ID # 6415-6452.) On July 3, 2014, Procter & Gamble timely filed its "Petition for Permission to Appeal Order Granting Class Certification." *See* Fed. R. Civ. P. 23(f); Fed. R. App. P. 5; (Pet. Case No. 14-303, RE 1-2). The Sixth Circuit accepted that Petition on November 3, 2014, concluding that "an interlocutory appeal is warranted." (Order, Case No. 14-303, RE 11-2.) This Court's appellate jurisdiction thus rests on 28 U.S.C. § 1292(e).

1

## **STATEMENT OF THE ISSUES**

1.      Plaintiffs allege that Align's advertising claims are false because Align provides *no* digestive health benefits to *any* consumer.  This contention is critical to class certification, because if Align provides digestive health benefits to some (but not all) consumers, Plaintiffs cannot meet Rule 23 requirements; in particular, commonality, typicality, and predominance.  *See Halliburton*, 134 S. Ct. at 2416; *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013).  Did the District Court err in granting class certification based on Plaintiffs' attorney's mere argument as to digestive health benefits, rather than conducting a "rigorous analysis" on this point, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quotation marks and citation omitted), which would have precluded Plaintiffs' ability to satisfy Rule 23?

2.      The District Court presumed that every class member relied on the allegedly false packaging in deciding to purchase Align, even though uncontroverted evidence showed that significant numbers of Align consumers based their purchases on other sources of information, including doctor recommendations.  Did the District Court improperly presume classwide reliance and causation in the face of this evidence, and err in deciding that common questions predominated over individualized ones as required by Rule 23(b)(3)?

3.    Did the District Court err in certifying classes that are overbroad because they include many members that have suffered no injury at all, and does certifying an overbroad class also violate Article III's standing requirement?

4.    Did the District Court err in concluding that members of the proposed classes (i.e., "all consumers who purchased the product within the relevant time period and in the relevant states" (Order, RE 140, Page ID # 6429)) were "ascertainable," even though the evidence demonstrated that Procter & Gamble, as a manufacturer and distributor, does not have records of who purchased the product, nor did Plaintiffs identify any reliable and feasible method of identifying class members?

## **INTRODUCTION**

The Procter & Gamble Company ("P&G") appeals a class certification ruling regarding its product Align.  Align is a probiotic used by millions of consumers for its digestive health benefits.  As stated on Align's packaging and in other advertisements, Align "naturally helps build [and] support a healthy digestive system, maintain digestive balance, [and] fortify your digestive system with

healthy bacteria." (Solomon Decl., RE 122, ¶ 72, SA188-89 (capitalization altered)).[1]

Plaintiffs are three people who claim that Align was ineffective for them and, thus, that P&G's advertising is false. Rather than acknowledge that sometimes a product works for some and not others, the three Plaintiffs allege that Align is worthless. (Pls.' Mot., RE 109, SA32.) Claiming that Align works for not a single person, Plaintiffs purport to represent a class of all persons who have ever purchased Align in five states since 2009. Their lawsuit alleges that P&G's advertising that Align provides digestive benefits is false in violation of those five states' consumer protection laws. They seek a full refund for all class members' purchases.

The fatal flaw in Plaintiffs' theory of class certification is that—even in the face of P&G's evidence substantiating its advertising claims—they produced no evidence to "*in fact*" support their claims that all class members received no

---

[1] Pursuant to the District Court's Stipulated Protective Order and Confidentiality Agreement (RE 91) and Supplemental Stipulated Protective Order (RE 100), the parties submitted most of their class certification briefing and exhibits under seal. P&G has placed the relevant sealed materials in a Sealed Appendix ("SA"). When referencing documents in the SA, P&G cites to the District Court docket number for the Notice of Manual Filing pertaining to the sealed document and the SA page number (*e.g.*, RE __, SA __).

digestive health benefits from Align and that P&G's advertising is false.  *See Dukes*, 131 S. Ct. at 2551.  Class certification requires evidence, not just allegations.  *Id.* at 2551-52.  And the evidence here shows many class members did receive digestive health benefits from Align.  (*See* Merenstein Decl., RE 115, Page ID # 4291-308.)  When confronted with P&G's well-documented studies demonstrating Align's effectiveness (*id.*), Plaintiffs responded with new, still unsupported allegations that any demonstrated benefit from Align was due to a "placebo" effect.  (Pls.' Reply, RE 136, SA229-30.)  Plaintiffs' sole expert witness testified that he had not "made any conclusions yet on the effectiveness of Align." (Komanduri Dep. Tr., RE 133, Page ID # 5765.)  He pointed to no study showing Align is ineffective or a placebo.  (*Id.*)  Instead, Plaintiffs' expert recommended Align and admitted to having "success" with giving Align to at least one of his own patients.  (*Id.* at Page ID # 5747-48.)

Without evidence backing their classwide allegations, Plaintiffs cannot demonstrate that they meet Rule 23's requirements of commonality, typicality, and predominance.  In a series of recent cases, the Supreme Court has explained that Rule 23 "'does not set forth a mere pleading standard,'" but instead establishes elements that must be proven "'*in fact*'" before a class is certified.  *Comcast Corp*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551-52).  It is not enough, for example, that a plaintiff posit a common question that could be applicable to an

5

entire class.  He must "satisfy through evidentiary proof" that the common

question actually exists and predominates over any other individualized questions.

*Id*.; *see also Halliburton*, 134 S. Ct. at 2416.  Such an inquiry is necessary even

when it overlaps with the merits, lest Rule 23's requirements be reduced "to a

nullity."  *Comcast Corp.*, 131 S. Ct. at 1433.

The District Court apparently misapprehended the import of these Supreme

Court decisions, and certified five statewide classes of all Align purchasers in

California, Florida, Illinois, New Hampshire, and North Carolina.  It did not

mention the Supreme Court's dictates to conduct a "'rigorous analysis'" and

"'probe behind the pleadings'" at the class certification stage.  *Dukes*, 131 S. Ct. at

2551 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 160 (1982)).  Rather, the

District Court decided to give Plaintiffs the "'benefit of the doubt,'" relying on a

1990 Minnesota district court decision for support.  (Order, RE 140, Page ID #

6419 (quoting *In re Workers' Comp.*, 130 F.R.D. 99, 103 (D. Minn. 1990)).  As a

result, rather than examine the evidentiary record, the District Court decided that it

could not test the validity of Plaintiffs' claims when determining class certification.

The District Court chose instead to accept Plaintiffs' allegations as true for class

certification purposes (*id*. at Page ID # 6418 n.2), in contravention of Supreme

Court and Sixth Circuit law.  *See Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d

402, 417-18 (6th Cir. 2012) ("A 'limited factual inquiry' assuming plaintiff's

6

allegations to be true does not constitute the required 'rigorous analysis' we have repeatedly emphasized.").

Plaintiffs' theory and the District Court's ruling are not just wrong in this case. They portend mischief in a broad swath of cases. Without rigorous analysis of a plaintiff's allegations, classes could be certified based on mere unsupported claims and conjecture, rather than facts demonstrating that the class has suffered the "'same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157). Under the District Court's view of the Rule 23 analysis, any product can be taken off the shelf, claimed to be worthless, and—regardless of the evidence—a plaintiff can obtain certification in a false advertising class action. Such a view not only allows plaintiffs with "weak claims to extort settlements from innocent companies," but also threatens the very viability of products that provide relief to millions. *See Halliburton*, 134 S. Ct. at 2424 n.7 (quotation marks and citation omitted).

That is not and cannot be the law. Therefore, P&G respectfully requests that the Court reverse the District Court's class certification decision.

## STATEMENT OF THE CASE

## I.   ALIGN

### A.   The Demonstrated Benefits Of Align

Align is an over-the-counter probiotic supplement, developed by P&G, that contains the probiotic strain *Bifidobacterium infantis 35624*. (Order, RE 140, Page ID # 6416.)  Concisely put, probiotics are good bacteria that help maintain the

natural balance of the human digestive system.  (Merenstein Decl., RE 115, ¶¶ 24-25, Page ID # 4297-98.)  Dating back to the late Nineteenth Century, scientists have been isolating beneficial bacteria found in the human digestive tract.  (*Id.* ¶ 29, Page ID # 4299.)  Now it is "generally accepted" by scientists that some bacteria (particularly the genera bifidobacteria[2] and lactobacilli) "constitute important components of the beneficial gut microflora."  (*Id.* ¶¶ 25, 28-31, Page ID # 4297-300.)  Reflecting this widespread scientific acceptance, 98% of gastroenterologists believe that probiotics have a role in treating gastrointestinal symptoms.  (*Id.* ¶ 32, Page ID # 4301.)

Further, scientific evidence demonstrates that the probiotic strain in Align, in particular, "provides digestive health benefits."  (*Id.* ¶¶ 42, 46, Page ID # 4306-07.) P&G presented expert testimony from Dr. Daniel Merenstein, a professor at Georgetown University Medical Center and an expert in probiotics.  He explained that *Bifidobacterium infantis 35624* has been "well-studied," including in human clinical trials and randomized controlled trials, and that "many studies . . . have demonstrated the strain's efficacy."  (*Id.* at ¶¶ 15, 16, 41, Page ID # 4294, 4305-06.) For example, one scientific review of probiotic treatments found that

---

[2] Bifidobacteria is the genus of the probiotic strain *Bifidobacterium infantis 35624* found in Align.  (Merenstein Decl., RE 115, ¶ 30, Page ID # 4299-300.)

*Bifidobacterium infantis 35624* showed improvement in "abdominal pain/discomfort, bloating/distention, and/or bowel movement difficulty compared with placebo." (*Id*. ¶ 41-d, Page ID # 4305.) After reviewing the relevant research, Dr. Merenstein concluded that *Bifidobacterium infantis 35624* has "demonstrated digestive health benefits." (*Id*. ¶¶ 15, 41, Page ID # 4294, 4305-06.) Dr. Merenstein of course acknowledged that the "effectiveness of probiotics varies from person to person, as is the case with all supplements and drugs." (*Id*. ¶ 46, Page ID # 4307.) But he concluded that, "[t]here is robust evidence" supporting Align's claim to improve gastrointestinal health. (*Id*. ¶ 35, Page ID # 4302; *see also id*. ¶ 46, Page ID # 4307 ("The claims that P&G makes with respect to Align are well supported and based in sound scientific research.").

Given this evidence, it is unsurprising that countless consumers report improvements to their digestive health from using Align, and purchase it over and over again. P&G presented unrebutted market research showing that a large percentage of consumers—ranging from 40% to 55% since March 2009—are repeat purchasers, indicating consumer satisfaction. (Penagos Decl., RE 122, ¶ 16, SA207; Solomon Decl., RE 122, ¶ 14, SA154.) As the District Court found, "the market research on Align confirms this product satisfaction." (Order, RE 140, Page ID # 6418.) Importantly, one study showed that 84.4% of repeat customers cited an "improvement in digestive health" as their reason for repurchase.

9

(Solomon Decl., RE 122, ¶ 48, SA172.)  In the face of such research, Plaintiffs

hypothesized that *all* reported benefits must be the result of the placebo effect.

(Pls.' Reply, RE 136, SA214, 229-30.)  But the District Court was skeptical:  "It

just strikes me as difficult to swallow that everybody who repeat buys Align,

they're all getting a placebo effect."  (Hr'g Tr., RE 141, Page ID # 6556.)

    Critically, Plaintiffs have not supported their allegation that Align's

advertising is false because Align works for no one.  Plaintiffs allege time and

again that P&G has "no legitimate basis to claim that the bacteria with which it

laces Align has any beneficial effects."  (SAC, RE 85, Page ID # 966.)  Plaintiffs

go so far as to allege that Align is "snake oil" composed of inert ingredients.  (Pls.'

Mot., RE 109, SA32.)  Yet Plaintiffs' sole expert did not support this claim.  (*See*

Komanduri Decl., RE 108-8, Page ID # 1594-1622.)  Plaintiffs' expert, Dr. Srindah

Komanduri, has not evaluated the falsity of P&G's advertising claims; indeed, he

has no opinion on it.  (Komanduri Dep. Tr., RE 133, Page ID # 5765.)  He did not

proffer any evidence (or even opine) that Align was ineffective and that all

consumer benefits can be attributed to a placebo effect.  (*Id*. ("I have not made any

conclusions yet on the effectiveness of Align.").)  Instead, Dr. Komanduri himself

*recommended* Align to approximately ten of his patients.  He also testified that for

at least one of those patients, Align was "successful."  (*Id*. at Page ID #5747-48.)

Dr. Komanduri is far from alone in recommending Align based on his medical

10

expertise and training.  For the past five years, Align has been the #1

gastroenterologist-recommended probiotic.  (Lacy Decl., RE 122, ¶ 4, SA199.)[3]

### B.    Product Marketing And Advertising

Align was first made available to consumers in September 2005, initially

through the Align eStore and a toll-free number.  Beginning in 2007, P&G

gradually introduced Align into retail stores.  It launched nationwide in April 2009.

(Order, RE 140, Page ID #6416-17.)  Since the national launch of the product,

P&G has marketed Align to both health professionals and consumers.  (*Id*. at Page

ID # 6417.)

For health professionals, P&G's marketing focused on in-person visits by

P&G sales representatives with gastroenterologists and primary care physicians.

(Solomon Decl., RE 122, ¶ 19, SA156.)  The materials P&G prepared for doctors

focused on the scientific substantiation for the specific probiotic strain in Align,

and provided citations or links to the published scientific studies concerning

---

[3] After a break in the deposition, with an opportunity to consult Plaintiffs'
lawyers, Dr. Komanduri said he wanted to clarify his testimony that Align was
"successful" for at least one of his patients by saying that his patient experienced
improved digestive health "at the time" she used Align (when no other treatment
had worked), but that he could neither prove nor deny that the positive outcome
was the result of using Align.  (Komanduri Dep. Tr., RE 133, Page ID # 5756.)

probiotics and *Bifidobacterium infantis 35624*.  (Order, RE 140, Page ID # 6417;

Lacy Decl., RE 122, ¶ 14, SA201-02.)

For consumers, P&G's advertising focused on the digestive health benefits

of Align.  (Order, RE 140, Page ID #6418.)  Specifically, its advertising language

focused "generally on digestive balance."  (Solomon Decl., RE 122, ¶ 72, SA188-

189.)  For example, samples of Align packaging reviewed by experts stated that

Align "naturally helps build [and] support a healthy digestive system, maintain

digestive balance, [and] fortify your digestive system with healthy bacteria."  (*Id.*

(capitalization altered)).  Some Align advertisements also included the statement

that Align is the "#1 Gastroenterologist Recommended" brand.  (*Id.*).  The Align

packaging also contained a money-back guarantee.  (*Id.*)

## C.    Many Consumers Purchased Align Based On Considerations Other Than Advertising.

Significant numbers of consumers became aware of and purchased Align

based on sources of information unrelated to the advertising at issue.  (*Id.* ¶¶ 12- 14,

SA154.)  The expert declaration of Dr. Michael Solomon, the Director of the

Center for Consumer Research at the Haub School of Business at St. Joseph's

University, explained that surveys show that between 33% and 60% of consumers

purchased Align based on doctors' recommendations, not P&G's packaging or

advertising.  (*Id.* ¶ 13, SA154.)  The surveys indicate that consumers not only

became aware of Align through a doctor, but also purchased it because their doctor

12

recommended they do so.  (*Id*. ¶¶ 13, 33-34, SA154, 163.)  As the District Court observed: "[T]here may be a number of plaintiffs who bought [Align] not because of the package but because the doctor told them to."  (Hr'g Tr., RE 141, Page ID # 6508.)

Doctors' recommendations are not, contrary to Plaintiffs' assertions, merely based on P&G's advertising.  The doctors had access to the underlying substantiation and studies.  Plaintiffs' own expert recommended Align to his patients without having ever talked to anyone from P&G.  (Komanduri Dep. Tr., RE 133, Page ID # 5749.)  His recommendation was based on abstracts he had seen at medical conferences.  (*Id*.)

Similarly, market research shows that some consumers purchased Align based on the recommendations of friends and family, because of online consumer reviews, or as a result of reading online articles, blogs, health forums, and other third-party material.  (Solomon Decl., RE 122, ¶ 26, SA158-59.)  Additionally, once consumers used the product—either because of an initial purchase or a free sample—many purchased Align again because of their own experience with the product.   They did not buy Align based on what is printed on the box, but because "it worked for them."  (*Id*. ¶ 14, SA154-55.)

## II. THE DISTRICT COURT CERTIFIED FIVE SEPARATE CLASSES BASED ON PLAINTIFFS' UNSUPPORTED ALLEGATION THAT ALIGN DOES NOT WORK FOR A SINGLE PERSON.

The District Court certified five separate classes composed of all consumers who purchased Align in California, Florida, Illinois, North Carolina, and New Hampshire, between March 1, 2009 and the date notice is first provided to the classes. (Order, RE 140, Page ID # 6415.)

In granting class certification, the District Court concluded as a threshold matter that "whether or not Align actually provides benefit[s] to digestive health is not yet properly before the Court." (*Id.* at Page ID # 6418 n.2.) The District Court admitted to "really struggling" with whether it should test Plaintiffs' claims. To avoid that result, Plaintiffs asserted that the District Court had to "accept as true" that "whether Align works . . . can be resolved on a class-wide basis." (Hr'g Tr., RE 141, Page ID # 6470-71, 6498.) That rightly "sound[ed] like a pleading burden" to the District Court, "not a rigorous analysis." (*Id.* at Page ID # 6471.) Yet rather than adhere to that "rigorous analysis" required by *Dukes, Comcast*, and other recent Supreme Court precedents, the District Court "'g[a]ve the benefit of the doubt to approving the class'" and allowed Plaintiffs to rest upon their unsupported assertions. (Order, RE 140, Page ID # 6419 (quoting *In re Workers' Comp.*, 130 F.R.D. at 103)). Probing whether Align "actually provides benefit[s]" to some

14

class members, it held, went to the merits and was not appropriate for class certification proceedings. (*Id*. at Page ID # 6418 n.2.)

The District Court's decision not to probe Plaintiffs' allegations was fatal to its analysis of the Rule 23 requirements. Once it accepted that Align either works for the whole class, or for no one—a proposition rebutted by P&G's expert (Merenstein Decl., RE 115, ¶ 46, Page ID # 4307-08)—the difficult (and crucial) issues of commonality and predominance were erroneously cast aside. The District Court reasoned that "determining whether Align provides any digestive health benefit is a common question" that could be decided the same for all class members. (Order, RE 140, Page ID # 6431.) In doing so, the District Court ignored the substantial evidence presented by P&G of Align's effectiveness for many class members. Reasoning that Plaintiffs' allegations—if accepted—presented a "binary" up or down question that could be resolved in "one stroke," the District Court concluded that material differences as to how Align works for different individuals were irrelevant. (*Id.* at Page ID # 6440.) Likewise, the District Court presumed that all class members bought Align based on P&G's advertised health claims, overlooking evidence that many class members purchased the product based on doctors' recommendations or other factors. (*Id.* at Page ID # 6433, 6441-44.)

P&G sought interlocutory review of the District Court's class certification order under Rule 23(f), explaining that the District Court did not conduct a "rigorous analysis" of the evidence as mandated by Rule 23. Specifically, P&G noted that after the Supreme Court's subsequent decision in *Halliburton*, which requires courts to weigh defendants' rebuttal evidence at the class certification stage, interlocutory appeal was warranted. This Court granted P&G's petition for review.

## SUMMARY OF THE ARGUMENT

The premise of Plaintiffs' request for class certification was that Align's advertising claims are false because Align is mere "snake oil" and can work for no one in the purported classes. (Pls.' Mot., RE 109, SA32). In response to robust evidence substantiating that Align provided digestive health benefits to many class members, Plaintiffs' response was that it must be the "placebo effect." (Pls.' Reply, RE 136, SA214, 229-30.) Plaintiffs, however, provided the District Court with no actual evidence supporting this premise.

Plaintiffs' failure to meet their burden should have been fatal to class certification. If Align works for some people, as the evidence shows, then individualized inquires defeat class cohesiveness. Certainly Plaintiffs' proffered damages model—that all class members get a full refund—would falter, precluding certification under Rule 23(b)(3) as articulated in *Comcast*, 133 S. Ct. at 1433.

Nonetheless, the District Court assumed Plaintiffs' premise to be true for the class certification stage, and on that basis concluded that Plaintiffs satisfied the Rule 23 requirements.  But assuming Plaintiffs' allegations to be true, particularly in the face of overwhelming contradictory evidence, was exactly what the District Court was *not* allowed to do.  As made abundantly clear by a trio of recent Supreme Court cases, Plaintiffs are not entitled to the "benefit of the doubt" at the class certification stage.  Following *Dukes*, *Comcast,* and *Halliburton*, "plaintiffs wishing to proceed through a class action must actually *prove*—not simply plead— that their proposed class satisfies each requirement of Rule 23."  *Halliburton*, 134 S. Ct. at 2412.  Allegations and conjecture will not do.  District courts must "rigorously analyze" the "evidentiary proof" to determine whether Rule 23 requirements are met. *Comcast Corp.*, 133 S. Ct. at 1432.[4]

The District Court's failure to "probe behind the pleadings" to test the facts underlying Plaintiffs' contention of class cohesiveness infected every aspect of its

---

[4] The class certification decisions in the other probiotic cases relied on by Plaintiffs and the District Court—*Fitzpatrick v. Gen. Mills, Inc.*, 263 F.R.D. 687 (S.D. Fla. 2010), *vacated*, 635 F.3d 1279 (11th Cir. 2011); *Johnson v. Gen. Mills, Inc.*, 275 F.R.D. 282 (C.D. Cal. 2011); and *Wiener v. Dannon Co.*, 255 F.R.D. 658 (C.D. Cal. 2009)—were all issued before the Supreme Court's decisions in *Dukes*, *Comcast*, and *Halliburton*.  Because these Supreme Court cases mark a heightened scrutiny in class action jurisprudence, Plaintiffs' heavy reliance on these prior cases is misplaced.

Rule 23 analysis, *Dukes*, 131 S. Ct. at 2551 (quotation marks and citation omitted),

and led it to certify multiple classes that are both overly broad and unascertainable.

Its error is evident in four distinct ways.

*First*, Plaintiffs failed to produce evidence that all Align purchasers suffered

the "same injury," a fact fatal to Rule 23(a)'s commonality requirement. *Id*.

(quotation marks and citation omitted). The District Court relied on Plaintiffs'

articulation of a common question. But *Dukes* held that posing a common question

is insufficient for commonality; the evidence, once scrutinized, must demonstrate

that the question *actually exists* across the class. *Id*. at 2551-52. Such scrutiny is

required even when it overlaps with the merits. *Id*. Here, the evidence revealed

that many class members benefitted from using Align, meaning their interests are

not shared by the three named Plaintiffs who claim that Align has no benefit,

defeating typicality.

*Second*, the District Court erred in concluding that the "far more demanding"

predominance standard was satisfied despite individualized questions as to

(1) whether Align provided digestive health benefits to class members; (2) whether

members relied upon P&G's alleged false advertising in deciding to purchase

Align; and (3) whether members are entitled to a full refund. *Amchem Prods. Inc.

v. Windsor,* 521 U.S. 591, 624 (1997). Plaintiffs stated their intention to rely on

common evidence to demonstrate Align's inefficacy, but unsubstantiated

18

allegations are not enough to satisfy Rule 23(b)(3).  Moreover, especially after

*Halliburton*—issued just days after the District Court's certification order—it is

clear that the District Court should have considered P&G's evidence rebutting

predominance.  134 S. Ct. at 2417.  Because P&G's evidence shows both that

Align works for many users and that many consumers purchased Align for reasons

unrelated to the allegedly false advertising, there is no basis for Plaintiffs' claim

that *all* Align purchasers deserve a full refund for every purchase of the product.

Plaintiffs cannot sustain a class with a "speculative" damages model that is

divorced from the record.  *Comcast Corp.*, 133 S. Ct. at 1433.

*Third*, the District Court should not have certified the classes because the

proposed classes were overbroad and contained "a great many persons who have

suffered no injury at the hands of the defendant."  *Kohen v. Pac. Invest. Mgmt. Co.*,

571 F.3d 672, 677 (7th Cir. 2009).  By certifying overly broad classes (which is

itself improper), the District Court's decision also raises Article III standing

concerns.  Rule 23 must be interpreted consistently with Article III.  *Amchem*

*Prods., Inc.*, 521 U.S. at 613.  Certifying a class when the evidence shows that

many members were not injured (or were not injured because of P&G's advertising)

allows absent class members through the federal courthouse doors despite an

inability to establish Article III standing.  *Denney v. Deutsche Bank AG,* 443 F.3d

253, 264 (2d Cir. 2006).  Though the District Court thought Article III was

satisfied as long as the class representatives had standing (irrespective of the rest of the class), the Sixth Circuit has not yet squarely addressed that question; indeed, there is a deep circuit split on the issue. Rather than wade into constitutional conflicts, the District Court should have denied class certification based on the class being overbroad.

*Lastly*, even under Plaintiffs' unsupported theory, the District Court should have denied class certification because there is no reliable and feasible way to identify the class members. A key component of class certification is that the class be ascertainable. If there is no manageable way to identify who is part of a class, then the efficiencies of a class action are lost to individual mini-trials of who purchased Align, when they purchased it, and where they purchased it. *See Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012). As the manufacturer, P&G has no list of all retail customers, and Plaintiffs propose only letting class members self-identify through affidavits. Defining a class based on an individual's say so, however, creates obvious fraud and due process concerns. *See Carrera v. Bayer Corp.*, 727 F.3d 300, 304 (3d Cir. 2013). Class treatment is thus completely unworkable.

Under the District Court's ruling, plaintiffs can claim that any consumer product fails to work as advertised, and, with no evidence supporting that claim, certify a false advertising class action. The implications of such an approach to

20

consumer products that help improve the lives of many would be grave.

Respectfully, the District Court's decision must be reversed.

## STANDARD OF REVIEW

Because the class action is "'an exception'" to the rule that litigation is

conducted on behalf of "'individual named parties only,'" a party seeking to certify

a class must satisfy several rigorous standards. *Comcast Corp.*, 133 S. Ct. at 1432

(quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). First, a class must

satisfy all four of the Rule 23(a) prerequisites: (1) numerosity, (2) commonality,

(3) typicality, and (4) adequate representation. *Young*, 693 F.3d at 537. Second,

the class must fall within one of the three categories listed in Rule 23(b). *Sprague*

*v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998). At issue here is

Rule 23(b)(3), which requires that questions common to the class "predominate"

over individualized ones. *Comcast Corp.*, 133 S. Ct. at 1432. Additionally, the

class must be "ascertainable," such that it is not overly broad and its members can

reliably and feasibly be identified. *See Romberio v. UNUMProvident Corp.*,

385 Fed. App'x 423, 431 (6th Cir. 2009). The party seeking class certification has

the burden to prove that the Rule 23 certification requirements are met. *Young*,

693 F.3d at 537. A failure on any requirement "dooms the class." *Pilgrim v.*

*Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).

21

The time when mere allegations could satisfy such rigorous standards is long past. "'Rule 23 does not set forth a mere pleading standard.'" *Gooch*, 672 F.3d at 417 (quoting *Dukes*, 131 S. Ct. at 2551). A plaintiff "'must affirmatively demonstrate his compliance'" with Rule 23(a) by "'prov[ing] that there are *in fact* . . . common questions of law or fact,'" and showing that he has satisfied Rule 23(b)(3)'s predominance requirement with "evidentiary proof." *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551-52); *see also Halliburton Co.*, 134 S. Ct. at 2416-17. As this Court has explained: "[A]ctual, not presumed, conformance with Rule 23[] remains . . . indispensable." *Gooch*, 672 F.3d at 417 (quotation marks and citation omitted). A court may not accept any of plaintiffs' allegations as "true" without examining the evidence underlying the claim. *Id*.

To meet the Rule 23 requirements, therefore, the Supreme Court has "[r]epeatedly . . . emphasized that it 'may be necessary for the court to probe behind the pleadings before coming to rest on the certification question,' and that certification is proper only if 'the trial court is satisfied after a rigorous analysis.'" *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2551-52). A court must consider defendants' evidence demonstrating that the class is not cohesive. *Halliburton Co.*, 134 S. Ct. at 2415-17. "Weighing conflicting expert testimony at the certification stage is not only permissible; it may be integral to the rigorous analysis Rule 23 demands." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d

305, 323 (3d Cir. 2008).  That rigorous analysis must take place even when it "overlap[s] with the merits of the plaintiff's underlying claim," as class determination "generally involves considerations that are enmeshed" with the merits of the cause of action.  *Dukes*, 131 S. Ct. at 2551 (citation omitted).

Accordingly, although the Sixth Circuit generally reviews a class certification decision for whether the district court "abused its discretion, a district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23."  *Sprague*, 133 F.3d at 397 (internal citation omitted).  That is, an abuse of discretion "occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment."  *Young*, 693 F.3d at 536.

## ARGUMENT

### I.    THE DISTRICT COURT FAILED TO RIGOROUSLY ANALYZE WHETHER PLAINTIFFS HAD IN FACT PROVEN COMMONALITY AND TYPICALITY, AS REQUIRED BY RULE 23(A).

#### A.    Because Plaintiffs Failed To Show That Align Works For No One, There Is No Common Question Unifying The Class.

Plaintiffs have failed to prove that there is a common question that actually unifies the class.  While the three named Plaintiffs may have testified that they did not receive digestive health benefits from Align, that is not enough for

23

commonality to exist across the purported classes with respect to the question of whether Align's advertising is false.  It is not enough for Plaintiffs to pose a common question; they must prove the common injury exists across the class. They have failed to do so, especially in the face of  overwhelming evidence demonstrating that Align *does* provide digestive health benefits to many class members.  (Merenstein Decl., RE 115, ¶¶ 37-42, Page ID # 4302-06.)

Rule 23(a)'s commonality element requires Plaintiffs to affirmatively prove that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "This language," the Supreme Court cautions, "is easy to misread," since it is not difficult to craft a class action complaint that "'literally raises common questions.'"  *Dukes*, 131 S. Ct. at 2551 (citation omitted).  Simply posing a question that may apply to all class members—*e.g.,* was P&G's advertising false? does Align provide digestive health benefits? are Plaintiffs entitled to restitution or punitive damages? (SAC, RE 85, Page ID # 976)—does not signify that those questions unify the class or that there is a "glue" holding the class together.  *Dukes*, 131 S. Ct. at 2552.  Accordingly, "[r]eciting these questions is not sufficient to obtain class certification."  *Id*. at 2551.  Instead, "[c]ommonality requires the plaintiff to demonstrate that the class members 'have suffered the *same injury*.'" *Id*. (emphasis added) (quoting *Falcon*, 457 U.S. at 157).

The Supreme Court's seminal decision on commonality is *Wal-Mart Stores, Inc. v. Dukes*, a case the District Court cited only in passing, and which Plaintiffs contend has little significance.  131 S. Ct. at 2550; (Hr'g Tr., RE 141, Page ID # 6550 (contending that *Dukes* "is not a case that has changed class action law at all.")).  In that case, the plaintiffs raised "the common question whether Wal-Mart's female employees nationwide were subjected to a single set of corporate policies" that discriminated against them based on gender.  *Dukes*, 131 S. Ct. at 2549.  The Supreme Court explained that such articulation of a common, binary question did not satisfy Rule 23's commonality requirement.  Rather, commonality requires a court to "probe behind the pleadings" and evaluate the evidence showing whether there is "*in fact*" a common question.  *Id*. at 2551.  Proof of commonality in *Dukes* thus required plaintiffs to show that Wal-Mart had engaged in a nationwide pattern or practice of discrimination; the question at the heart of the case's merits.  *Id*. at 2552.  The Supreme Court examined the plaintiffs' evidence (including extensive statistical, sociological, and anecdotal evidence) and ultimately determined that the proffered question was not *in fact* common to the class, defeating certification.

Plaintiffs' theory here parallels the "up-or-down" theory in *Dukes*: that is, whether Align provides digestive health benefits is an up-or-down proposition on which the class is unified.  That simplistic approach was insufficient in *Dukes* and

it is here as well.  In *Dukes*, moreover, the plaintiffs produced mounds of statistics and expert testimony, which, once analyzed and weighed against defendant's evidence, still did not convince the Court there was a common injury.  In contrast, these Plaintiffs did not proffer *any* evidence showing a common injury.  Contrary to *Dukes*'s dictates, the District Court's opinion is devoid of any discussion of the evidence, weighing of the expert testimony, or other "rigorous analysis" of the class allegations.  Had the District Court examined the evidence, it would have realized that Plaintiffs failed to show that Align is "snake oil," such that all class members actually suffered the "same injury."  *Dukes*, 131 S. Ct. at 2552.[5]

Following *Dukes*, the Sixth Circuit has repeatedly faulted trial courts for failing to scrutinize the evidence proffered on commonality and the other Rule 23 requirements.  In *Gooch v. Live Investors Insurance Company of America*, the

---

[5] Plaintiffs alleged that the studies P&G introduced into the record are not "proper clinical studies that provide substantiation, clinical or otherwise, for Align's digestive health claims."  (SAC, RE 85, ¶ 33, Page ID # 971.)  But such assertions are insufficient, and their only expert failed to comment on any of these studies.  (*See* Komanduri Dep. Tr., RE 133, Page ID # 5756 ("I have not formulated any thoughts on the specifics of the various studies [supporting Aligns efficacy].").)  More critically, Plaintiffs admitted at oral argument that "there was a statistically significant outcome" in some studies showing the efficacy of Align's probiotic strain.  (Hr'g Tr., RE 141, Page ID # 6549.)  Without expert testimony or other evidentiary support, Plaintiffs' counsel attempted to dismiss such results as "mere chance."  (Pls.' Reply, RE 136, SA228.)  But counsel's argument and allegations are not evidence in any event.

district court took plaintiff's class allegations "as true," resolved doubts "in the plaintiff's favor," and conducted only a "limited factual inquiry into the class allegations." 672 F.3d at 417 (quotation marks and citation omitted).  On review, this Court did not mince its words, holding:  "This standard is clearly wrong."  *Id*. In the end, this Court only upheld the class certification decision because, despite its erroneous articulation of the standard, the district court had indeed considered all the relevant documents and weighed the affidavits and exhibits.  *Id*. at 418.  *See also Young*, 693 F.3d at 537 (district court "erroneously stated that it 'must take the substantive allegations of the complaint as true'" for class certification) (citation omitted).  A court cannot simply accept plaintiffs' class allegations as true without scrutinizing the evidence, and it cannot give plaintiffs the "'benefit of the doubt.'" (Order, RE 140, Page ID # 6419 (quoting *In re Workers' Comp.*, 130 F.R.D. at 103).)  But that is precisely what occurred here.

The District Court decided not to examine the record evidence.  Relying on *In re Whirlpool*, it was concerned that an evidentiary analysis would "'turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" (Order, RE 140, Page ID # 6418 n.2, 6420, citing *In re Whirlpool*, 772 F.3d 838, 851-52 (6th Cir. 2013).)  This Court's decision in *Whirlpool*, however, clarifies that "inquiry into the merits may be necessary to decide if the Rule 23 prerequisites are met," and it prohibits considering the merits only if they are "[ir]relevant" to

27

class certification. *Id*. at 851 (citing *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194-95 (2013); *Dukes*, 131 S. Ct. at 2551-52).

In fact, *Whirlpool*'s careful analysis supports P&G's position, not Plaintiffs'. In that case, this Court reasoned that "[a]fter reviewing the factual record," "sifting the abundant evidence," and "consider[ing] merits issues relevant in deciding" class certification, the district court had "satisfied the requirement to perform a 'rigorous analysis.'" *Id*. at 852. The evidence in the record in that case "confirm[ed] that the issues regarding alleged design flaws [in the washing machine] are common to the class." *Id*. at 855. Specifically, discovery documents revealed that, all the Whirlpool washing machines were in fact prone to mold problems despite variations in customer laundry habits. *Id*. at 854-855 (reviewing evidence). Accordingly, all who had purchased the washing machine had at minimum suffered the "same injury"—receiving a less valuable product. *Id*. at 857. In stark contrast to *Whirlpool*, Plaintiffs adduced no such proof of common injury here. And unlike *Whirlpool*, the record before the District Court showed that many Align users received the digestive health benefits promised. There is no "common defect." *See Phillips v. Philip Morris Cos.*, 298 F.R.D. 355, 368 (N.D. Ohio 2014) (distinguishing *Whirlpool* because no evidence of common injury).

Finally, the District Court dismissed evidence demonstrating that class members were "satisfied" as irrelevant to whether the class suffered a common

injury because, the District Court reasoned, "satisfaction" could be the result of a placebo and not necessarily an indication of whether P&G's claims of Align's effectiveness were true.  (Order, RE 140, Page ID # 6421-23.)  Justifying that conclusion, the District Court cited *FTC v. Pantron I Corp.*, where the Ninth Circuit held that when "a product's effectiveness arises solely as a result of the placebo effect, a representation that the product is effective constitutes a 'false advertisement' even though some customers may experience positive results."  33 F.3d 1088, 1100 (9th Cir. 1994).  In that case, however, the FTC presented substantial evidence proving that the product "had no effectiveness (other than its placebo effect)."  *Id*. at 1092.  Here, on the other hand, Plaintiffs presented no evidence that the reported consumer benefits were due solely to the placebo effect.  Instead, consumer satisfaction—and repeat purchasing—is probative of Align's benefits to consumers.  (*See supra* at 9-10.)  Even the District Court thought it "difficult to swallow that everybody who repeat buys Align, [is just] getting a placebo effect."  (Hr'g Tr., RE 141, Page ID # 6556.)  Moreover, P&G's evidence is not limited to reports of consumer satisfaction.  The record includes unrebutted expert testimony demonstrating scientifically significant substantiation of the digestive health benefits supporting P&G's advertising for Align.  This case is thus not one warranting deferral to the District Court's exercise of judgment in

weighing competing evidence. *See Pilgrim*, 660 F.3d at 946. The record, when fairly and accurately considered, precludes a finding of class commonality.

### B. The Class Representatives' Claims Are Not Typical Given P&G's Proof That Align Works For Many Consumers.

For similar reasons, Plaintiffs' class representatives fail to meet Rule 23(a)'s typicality requirement, which mandates that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *see Falcon*, 457 U.S. at 157 n.13 (commonality and typicality "tend to merge"). The typicality requirement is distinctly important for ensuring that the class representatives' "interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." 1 Herbert B. Newberg and Alba Conte, Newberg on Class Actions § 3.13, at 3–75 (3d ed 1992). In this sense, the typicality requirement overlaps with the adequacy requirement, because "in the absence of typical claims," representatives cannot adequately represent the class. *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1083 (6th Cir. 1996). As with the other Rule 23 requirements, proving typicality requires "more than general conclusory allegations that unnamed [plaintiffs] have been [wronged]" in the same manner as the named plaintiffs. C. Wright & A. Miller, *Fed. Prac. & Procedure*, § 1764 at n.21.1 (Supp. 1982).

Here, the three named Plaintiffs' interests are not coextensive with a significant portion of the class they purport to represent. Because Align did not work for them, the named Plaintiffs claim to want restitution. Because they believe Align is "snake oil," they also want to severely cripple the brand as a matter of "public policy." (SAC, RE 85, Page ID # 976.) But what Plaintiffs cannot overcome is P&G's evidence demonstrating that Align provides the promised digestive health benefits to a large percentage of consumers. Doctors recommend it, consumers purchase it over and over again, and people recommend it to their family and friends precisely because they receive a digestive health benefit. (*See supra* at 7-11.) Thus, many of the unnamed class members have no interest in pursuing restitution, nor in crippling the product. Indeed, this lawsuit may be *antithetical* to their interests. Lawsuits against probiotics that work— especially large liability class action suits based on pure conjecture—only threaten a product that provides proven benefits to countless class members.

"Once again, it should have been obvious to the district judge that it needed to 'probe behind the pleadings' before concluding that the typicality requirement was met." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1082. Rather than evaluate the evidence, however, the District Court here accepted Plaintiffs' assertion that their interests were the same as all Align purchasers. (Order, RE 140, Page ID # 6422.) The District Court believed that neither P&G "nor its expert, Dr. Merenstein,

31

contend[ed] that Align works for some, but not others." (*Id.*) But what Dr. Merenstein actually said was this: "[E]ffectiveness of probiotics varies from person to person, as is the case with all supplements and drugs." (Merenstein Decl., RE 115, ¶ 46, Page ID # 4308.) The District Court's contrary conclusion simply reflects a misunderstanding about how probiotics are deemed effective. No supplement must benefit *everyone* to be deemed effective—none does. Advertising claims based on well-supported and sound scientific research are not "misleading" if the product does not provide a benefit to 100% of consumers.

That these three Plaintiffs may not have experienced the benefit that many other consumers do makes their claims atypical of the class they purport to represent. On that basis as well, these classes should not have been certified.

## II.    WITHOUT SCRUTINIZING THE EVIDENCE, THE DISTRICT COURT ERRONEOUSLY CONCLUDED THAT COMMON ISSUES PREDOMINATE, AS REQUIRED BY RULE 23(B)(3).

Even assuming Plaintiffs can satisfy Rule 23(a) (and they cannot), they fall well short on the "far more demanding" predominance criterion of Rule 23(b)(3). *Amchem Prods.*, 521 U.S. at 624. To demonstrate predominance, parties seeking class recognition must demonstrate with "*evidentiary proof*" that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Comcast Corp.*, 133 S. Ct. at 1432 (emphasis added); Fed. R. Civ. P. 23(b)(3). Because Rule 23(b)(3) is an "adventuresome innovation," where

32

class actions are "not as clearly called for," courts have a duty to take a "close look" at plaintiffs' proof that common questions predominate. *Comcast Corp.*, 133 S. Ct. at 1432 (quoting *Dukes*, 131 S. Ct. at 2558).

Plaintiffs did not meet their heightened burden on predominance because they produced *no evidence* to show that common questions predominate over individualized ones, while P&G's evidence proves the opposite. In particular, a "close look" at the record evidence demonstrates that individualized inquires overwhelm common questions as to three issues integral to Plaintiffs' false advertising claims: (1) whether class members were "injured"; (2) whether class members purchased Align in reliance on (or as a result of) P&G's advertising; and (3) whether class members are entitled to a full refund. Any of these three issues independently defeat Rule 23(b)(3)'s predominance requirement.

**A.    Record Evidence Demonstrates That Injury Cannot Be Shown On A Classwide Basis Because Align Is Effective For Many Class Members.**

Given the unrebutted evidence that Align was effective in improving digestive health for many class members, injury as Plaintiffs have defined it (purchase of a falsely advertised product) cannot be proven on a classwide basis, rendering class certification inappropriate under Rule 23(b)(3). To meet the predominance requirement, "plaintiffs must also show . . . that they can prove, through common evidence, that all class members were in fact injured by the

alleged [conduct]." *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 725 F.3d 244, 252 (D.C. Cir. 2013). Plaintiffs did not do that here.

To be sure, Plaintiffs alleged that there is common proof of injury. But "[n]othing is simpler than to make an unsubstantiated allegation." *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1086 (7th Cir. 2014). Plaintiffs produced no evidence (and the District Court identified none) that all, or even most, of the class members failed to receive a product that worked as advertised. Plaintiffs' expert would neither testify that P&G's advertising was unsupported nor that any benefits of Align were attributable to the placebo effect. (Komanduri Dep. Tr., RE 133, Page ID # 5765.) Instead, he recommended Align and admitted that at least one of his patients had "success" with Align. (*Id.* at Page ID #5747-48.) *Compare Cabral v. Supple, LLC*, No. ED 12-00085, 2013 U.S. Dist. LEXIS 184170, at *2 (C.D. Cal., Feb. 14, 2013) (predominance satisfied because plaintiffs produced "series of clinical trials demonstrate[ing] that the combination of these ingredients [in beverage marketed to help arthritis] is no more effective than placebo").

Classwide proof of injury cannot stand in light of P&G's evidence that Align is effective, including (1) scientific studies, (2) expert and doctors' reports, and (3) market research showing a significant number of repeat purchasers who continued to purchase Align because they received digestive health benefits. *See, e.g.*, *Phillips,* 298 F.R.D. at 364-65, 368 (no predominance because plaintiffs' claim

34

that light cigarettes do not convey less tar and nicotine, as advertised, was rebutted by defendant's experts showing that, "for many, the cigarettes perform precisely the way they are warranted to"). Plaintiffs, therefore, failed to meet their burden of producing "common evidence to show all class members suffered *some* injury." *In re Rail Freight*, 725 F.3d at 252.

Irrespective of the evidence, the District Court concluded that there could be no predominance problem because whether P&G's advertising was "true or not" was a "binary" question applicable to the whole class. (Order, RE 140, Page ID # 6440.) Even for questions that are "binary" (and the one posed here is not), the Supreme Court requires that there be "evidentiary proof" supporting the plaintiffs' theory to pass the "more demanding" Rule 23(b)(3) standard. *Comcast Corp.*, 133 S. Ct. at 1432. That is, "it is not enough at [the class certification] stage that the plaintiffs *intend* to rely on common evidence and a single methodology." *Parko*, 739 F.3d at 1086. A judge must "investigate[] the realism of the plaintiffs' [common] injury . . . in light of the defendants' counterarguments, and to that end should [take] evidence." *Id.*

Several recent cases are illustrative. In *Pilgrim v. Universal Health Card, LLC*, this Court granted an interlocutory appeal and reversed class certification in part because there was insufficient proof of predominance. 660 F.3d at 948. The plaintiffs alleged that a health care discount program was "worthless" because it

provided none of the promised benefits to any members—a "binary" question, as either the program operated as advertised or not.  Defendants, however, introduced evidence that the program was beneficial for some members.  Accordingly, this Court reasoned that, to establish predominance, "the plaintiffs would need to make particularized showings" that there was common evidence that the program was worthless to the entire class.  *Id*.  Such evidence was "particularly [necessary] since the program apparently satisfied some consumers, as confirmed by the unchallenged reality that fifteen percent of those who signed up remained enrolled after the suit was filed."  *Id*.  Given the 40% to 55% repurchase rate of Align (*supra* at 9), the District Court should have similarly required Plaintiffs to make "particularized showings" that Align is ineffective for the whole class.

Likewise, in *Parko v. Shell Oil Co.*, the plaintiffs alleged that defendants' negligent practices with respect to a petroleum byproduct resulted in contamination of the class members' water supply.  739 F.3d at 1085.  But a close look at the expert's evidence demonstrated that it was unclear that there was in fact contamination in the water supply.  *Id*. at 1086.  Such scrutiny led the court to question whether it was "even clear that the plaintiffs have *identified* a common issue," because, "[i]f the expert's evidence is rejected, there will be no basis for" the common injury claimed.  *Id*.  Thus, plaintiffs failed to show that common issues predominated.  The Seventh Circuit held that the district court should not

have rested on plaintiffs' intent to produce common evidence. "[I]f intentions (hopes, in other words) were enough, predominance, as a check on casting lawsuits in the class action mold, would be out the window." *Id.* Notably, the Seventh Circuit recognized in *Parko* that it had affirmed class certification in another case with nearly identical allegations. *Id.* at 1087. But in the other case, there was evidence that the contamination entered the water supply, while in *Parko* there was "no evidence" of common injury. *Id.* Evidence makes all the difference in satisfying Rule 23(b)(3)'s predominance requirement. *See id.*

The District Court's error in failing to scrutinize the evidence of a predominating common injury is all the more clear after *Halliburton*, which the Supreme Court issued just after the District Court certified these classes. *Halliburton Co.*, 134 S. Ct. 2416-17. *Halliburton* held that defendants may introduce, and courts must consider, evidence that rebuts plaintiffs' showing of predominance. Such rebuttal evidence must be weighed at the class certification stage, even when plaintiffs have produced enough evidence to invoke a legal presumption that, unchallenged, would support class certification. *Id.* So too here, the District Court could not postpone considering P&G's evidence that there was not a common injury. As in *Halliburton*, that evidence defeats Plaintiffs' ability to show that common questions predominate over individual ones.

37

**B.    The District Erroneously Presumed Classwide Reliance And Causation In The Face Of Contrary, Uncontroverted Evidence.**

Plaintiffs cannot meet their Rule 23(b)(3) burden for yet another reason. Even assuming P&G's advertising was false or misleading (which it is not), individualized inquiries of causation and reliance under the applicable state laws would remain.  Questions of causation and reliance often preclude certification under Rule 23(b)(3).  *See Sprague*, 133 F.3d at 398; Rule 23(b)(3) Rules Advisory Committee Notes, 39 F.R.D. 69, 103 (1966).  Because many consumers did not base their decision to purchase Align on the allegedly false advertising, class treatment is inappropriate in this case.

Each of the seven causes of action at issue requires a showing that any injury was caused by P&G's alleged misrepresentations.  Three causes of action also require a showing of reliance.  (*See* Def.'s Opp'n, RE 122, SA108-12).[6]  Not only

---

[6] Plaintiffs' claims under the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., California's breach of express warranty law, and the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1, each require a showing of both causation and actual reliance on the defendant's alleged misrepresentations.  *See Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 537 (S.D. Cal. 2011) ("Claims under the CLRA require proof of causation . . . [and] reliance."); *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986) ("cause of action for breach of express warranty" requires "plaintiff's reasonable reliance [on warranty], and a breach of that warranty which proximately causes plaintiff injury."); *Bumpers v. Cmty Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013) ("claim under [N.C. Gen.

does variation in state law make class treatment unmanageable, *see Pilgrim*, 660 F.3d at 947-48, but it also gives rise to another individualized issue—whether the allegedly false advertisement was the cause of a class member's purchase. *See, e.g.*, *Oshana v. Coca-Cola Co.*, 225 F.R.D. 575, 586 (N.D. Ill. 2005) (denying certification of ICFDPA class action because claim required "individual analysis of the extent to which [defendant's] marketing played a role in each class member's decision to purchase [the product]"), *aff'd* 472 F.3d 506 (7th Cir. 2006).

---------------

(continued…)

Stat.] 75-1.1 stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate caus[ation]). Plaintiffs' claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDPA"), 815 Ill. Comp. Stat. 505/1 et seq., the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., the New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. Ann. § 358-A:1 et seq., and the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, require a showing that the alleged misrepresentations caused a plaintiff's injury. *See Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) ("Proximate causation is an element of all private causes of action under the [ICFDPA]."); *Miami Auto. Retail, Inc. v. Baldwin*, 97 So. 3d 846, 857 (Fla. 3d Dist. Ct. App. 2012) ("FDUTPA requires proof of . . . defendant's causation of damage."); *Gilroy v. Ameriquest Mortg. Co.*, No. 07-cv-0074, 2009 U.S. Dist. LEXIS 13306, at *15 (D.N.H. Feb. 20, 2009) (plaintiff must show unfair or deceptive practice "caused [] injury" for NHCPA); *Gonzalez v. Procter & Gamble Co.*, 247 F.R.D. 616, 625 (S.D. Cal. 2007) ("UCL claim must establish a causal link between defendant's business practice and the alleged harm.").

Here, P&G introduced evidence that significant numbers of consumers became aware of and purchased Align based on sources of information *unrelated* to the advertising at issue. Market research showed that between 33% and 60% of consumers purchased Align because of doctors' recommendations. (Solomon Decl., RE 122, ¶ 13, SA154.) Doctors' recommendations, too, were not simply the result of P&G's outreach to doctors. Rather, doctors made recommendations based on their own expertise and the underlying science supporting a product's efficacy. (Merenstein Decl., RE 115, ¶¶ 43-44, Page ID # 4306-07.) For example, Plaintiffs' own expert recommended Align to a patient without ever having contact with a P&G representative. (Komanduri Dep. Tr., RE 133, Page ID # 5749.) Courts routinely deny certification where the independent decision-making of a doctor plays a role in a consumer's decision to use a product. *See, e.g.*, *In re Am. Med. Sys.*, 75 F.3d at 1085; *Minkler v. Kramer Labs., Inc*., No. CV 12-9421, 2013 U.S. Dist. LEXIS 90651, at *10 (C.D. Cal. Mar. 1, 2013) (denying certification because proposed class "includes members who did not rely upon the representations made on the product's packaging" but instead "on the recommendations of physicians or pharmacists"). The same result should prevail here. Moreover, class members also purchased Align because of recommendations by friends, family, or online reviews and their own positive experience with the product, not because of what was printed on the box. (*See* Solomon Decl., RE 122, ¶ 14, 26-27, SA154, 158.)

40

On the critical elements of causation and reliance, Plaintiffs failed to produce any evidence to establish that individual issues would not unduly complicate class treatment. *Compare Langendorf v. Skinnygirl Cocktails, LLC*, No. 11-cv-7060, 2014 U.S. Dist. LEXIS 154444, at *4 (N.D. Ill. Oct. 30, 2014) (plaintiff failed to meet Rule 23(b)(3) standard because she "produced *no evidence* to show that causation will be defeated as to only 'a few' class members") *with Young*, 693 F.3d at 543 (class certified where plaintiffs had "[c]ommon proof of causation—that use of geocoding software could have prevented harms suffered by the class members"). A "close look" at the record here would have shown that individual mini-trials would be necessary to sort out questions of reliance and causation, rendering class treatment unworkable.

Rather than look to the evidence, the District Court *presumed* classwide reliance and causation, adopting Plaintiffs' allegations that all customers purchased Align because of the advertising. (Pls.' Reply, RE 136, SA263-64.) "Given the uniformity and ubiquity of Defendant's advertising message" that Align provides digestive health benefits, the District Court reasoned that how each class member "received that message is irrelevant." (Order, RE 140, Page ID # 6433, 6443.) In adopting this presumption, the District Court not only swept away individual differences between class members, but also discarded the specific requirements of each state's law. For example, inferences of proximate causation are not permitted

41

under the ICFDPA.  *See Clark v. Experian Info. Solutions, Inc.*, 256 Fed. App'x 818, 821-22 (7th Cir. 2007) (ICFDPA "requires individualized proof" and "does not provide for such causation to be inferred").  As a matter of law, the District Court erred in presuming away causation questions for the Illinois class, at the very least.

Although presumptions of reliance or causation may arise under certain causes of action, they are not appropriate when, as here, there is evidence suggesting that these elements are lacking for many class members.  *See Vasquez v. Superior Court*, 484 P.2d 964, 973 (Cal. 1971) (defendants may introduce evidence to rebut inference of reliance under California UCL and UCLA); *Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 533 n.4 (S.D. Cal. 2011) (causation, under UCL, should not be "inferred on a class-wide basis, where . . . individualized inquiries would be necessary" to determine whether alleged conduct "caused harm").   Again, *Halliburton* makes clear that district courts must consider evidence at the class certification stage which rebuts legal presumptions that, if left unchallenged, could satisfy class criteria.  *Halliburton*, 134 S. Ct. at 2415-17.  And "presuming reliance—especially in light of record evidence to the contrary— would be inconsistent with the mandate to engage in a rigorous analysis of the Rule 23 factors."  *Phillips*, 298 F.R.D. at 367 n.17.  The District Court therefore erred by sweeping aside class differences and relying on presumptions to satisfy

Rule 23(b)(3)'s demanding standard. Without such an erroneous presumption, individualized inquiries into each consumer's purchasing decisions will predominate, precluding class certification.

### C. The District Failed To Scrutinize Plaintiffs' Damages Model, In Violation Of *Comcast v. Behrend*.

Turning to the damages issue provides perhaps the most glaring example of why these classes are not properly certified under Rule 23. Plaintiffs failed to provide any viable method to determine or award classwide damages, as required by *Comcast Corp. v. Behrend*, 133 S. Ct. at 1433. Plaintiffs seek a full refund for all purchasers of Align in all five states where classes were certified. (SAC, RE 85, Page ID # 987.) This approach is devoid of evidentiary support. Again, mere assertion cannot satisfy Plaintiffs' burden to prove predominance. By certifying these five classes anyway, the District Court essentially allowed Plaintiffs to pick a product off the shelf, allege (without proof) that the product is *worthless* for every single user, claim that the advertising is therefore false, and then baldly assert that damages can be determined on a classwide basis because *all* purchasers deserve a *full* refund. After *Comcast*, however, it is "not enough to submit a questionable [damages] model [with] unsubstantiated claims." *In re Rail Freight*, 725 F.3d at 254; *id*. ("plausible" damages model not enough for Rule 23(b)(3)).

In *Comcast*, the Supreme Court held that a district court must scrutinize a putative class's proposed damages model. 133 S. Ct. at 1433. There, the Court

43

held that the lower courts "ran afoul" of Rule 23(b)(3) when they refused to entertain arguments against plaintiffs' damages model "simply because those arguments would also be pertinent to the merits determination." *Id*.  The Third Circuit found it sufficient that plaintiffs had articulated a classwide theory of damages, and did not examine whether the methodology was "reasonable" or "speculative." *Id*.  Under that logic, however, "at the class-certification stage *any* method of measurement is acceptable so long as it can be applied classwide, no matter how arbitrary the measurements may be." *Id*.  Failure to scrutinize the damages model "would reduce Rule 23(b)(3)'s predominance requirement to a nullity." *Id*.

That is what happened here.  Plaintiffs "full refund" model is entirely divorced from the evidence in this record.  The evidence before the District Court established that substantial numbers of class members benefitted from using Align. The record further demonstrated that a significant percentage of the class did not rely on the alleged false advertising when deciding to purchase Align.   An award of a full refund to these class members would therefore amount to an improper windfall, not a proper classwide award.  *See, e.g.*, *Caldera v. J.M. Smucker Co.*, No. CV 12-4936, 2014 U.S. Dist. LEXIS 53912, at *10 (C.D. Cal. Apr. 15, 2014) ("Restitution based on a full refund would only be appropriate if not a single class member received any benefit from the products."); *In re POM Wonderful LLC*, No.

ML 10-02199, 2014 U.S. Dist. LEXIS 40415, at *14 n.2 (C.D. Cal. Mar. 25, 2014)
(rejecting full refund model because improper to assume "that not a single
consumer received a single benefit").

Here, too, the District Court erred in relying on *Whirlpool* in concluding that
Plaintiffs' damages model was sufficient.  (Order, RE 140, Page ID # 6444.)  The
class at issue in *Whirlpool* was for liability only, not damages, and hence the Court
found that *Comcast* had "limited application."  772 F.3d at 860.  To the extent
*Comcast* reaffirmed the rule that "liability issues relating to injury must be
susceptible of proof on a classwide basis," the *Whirlpool* Court found that standard
was not met because the plaintiffs submitted ample evidence that all the washing
machines were prone to mold based on the product's design.  *Id*.; (*see also supra* at
27-28).  But here "the damages model cannot withstand this scrutiny."  *In re Rail
Freight*, 725 F.3d at 253.  That "is not just a merits issue."  *Id*.  Rather, properly
considered, that glaring shortcoming by Plaintiffs precludes class certification.

## III.   THE DISTRICT COURT'S CERTIFICATION OF OVERLY BROAD CLASSES RESULTS IN A VIOLATION OF ARTICLE III STANDING.

The District Court's failure to scrutinize the record leads to a further
problem—one with potential constitutional implications that can and should be
avoided.  Because the District Court certified classes that include many persons

who suffered no injury, it not only certified overbroad classes, but it also violated Article III's standing requirement.

This and other courts have cautioned against certifying classes that are overbroad. *See Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1214 (6th Cir. 1997) ("Our review of the record—which includes the memoranda filed below regarding certification—leads us to believe that the class is overly broad."); *Loreto v. Procter & Gamble Co.*, No. 1:09-cv-815, 2013 U.S. Dist. LEXIS 162752, at *12 (S.D. Ohio Nov. 15, 2013) ("A class is overbroad if it includes significant numbers of consumers who have not suffered any injury or harm."). "[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant." *Kohen*, 571 F.3d at 677; *see also Bussey v. Macon Cnty. Greyhound Park, Inc.*, 562 Fed. App'x 782, 790 (11th Cir. 2014) (per curiam) (reversing class certification order because district court failed to conduct "rigorous analysis" to determine whether class members had actually suffered identifiable losses); *Chieftain Royalty Co. v. XTO Energy Inc,*, 528 Fed. App'x 938, 943-44 (10th Cir. 2013) (substantially similar). Instead, there must be "common evidence to show all class members suffered *some* injury" caused by defendants. *In re Rail Freight*, 725 F.3d at 252. Because evidence that all—or even most— class members suffered an injury is lacking here, the classes are overbroad and should not have been certified.

While the District Court's decision could be reversed simply because the classes are overbroad, its certification of a class including many members who did not suffer any injury also raises Article III standing problems. The Supreme Court has cautioned that Rule 23 must be "interpreted in keeping with Article III constraints." *Amchem Prods., Inc.*, 521 U.S. at 613. The federal courts are, of course, open only to justiciable cases. Such justiciability requires that plaintiffs have suffered an injury-in-fact attributable to the defendant that may be redressed by the lawsuit. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). A class certification decision opens the doors of federal court to all members of that class, so a district court cannot turn a blind eye to whether absent class members would have standing.

The District Court here dismissed standing problems by explaining that "any purchaser of a falsely advertised product would have standing" by virtue of having spent money on the product that, it presumed, provided no benefit. (Order, RE 140, Page ID # 6425.) The elements of standing, however, "are not mere pleading requirements" and a court must be assured at each "stag[e] of the litigation" that standing exists. *Lujan*, 504 U.S. at 561. Especially in light of P&G's contrary evidence, it was therefore improper for the District Court to rely on mere allegations that all purported class members must not have received any benefit

47

from Align, and purchased it as a result of P&G's advertising, to satisfy Article III's injury and causation elements.[7]

Additionally, the District Court's holding that only the class representatives need to have standing to satisfy Article III is questionable at best. (Order, RE 140, Page ID # 6424.)  Certainly, as the District Court recited from *Sutton v. St. Judge Medical Center*, "'[t]he class representative must allege an individual, personal injury in order to seek relief on behalf of himself or any other members of the class.'" (*Id*.; quoting *Sutton v. St. Jude Med. S.C., Inc.,* 419 F.3d 568, 570 (6th Cir. 2005).)  But that case focused on whether the class representative had standing; it did not address whether Article III would be satisfied in the face of evidence that many absent class members lacked standing.  *Sutton*, 419 F.3d at 570.  The Sixth Circuit has yet to squarely address this question.  Indeed, the District Court

_____

[7] As for causation, the District Court found this element would be satisfied because all class members were "necessarily exposed to . . . the alleged false and deceptive digestive health statements on the packaging."  (Order, RE 140, Page ID # 6425.)  Assuming mere exposure to advertising could be enough for causation under the state law causes of action (*but see supra* 38-43),  it is not enough to confer standing in federal court.  *See, e.g.*, *Avritt v. Reliastar Life Ins. Co*., 615 F.3d 1023, 1034 (8th Cir. 2010).  Even if a plaintiff has standing under a state statute, he or she can be "'foreclosed from litigating the same cause of action in federal court, [because] he cannot demonstrate the requisite injury'" required by Article III.  *Id.* (quoting *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001-02 (9th Cir. 2001)).

recognized in a previous case: "While individual class members do not have to submit evidence of personal standing, a class cannot be certified if any members in the class would lack Article III standing." *Loreto*, 2013 U.S. Dist. LEXIS 162752, at *10 (Black, J.).

If this Court affirms the certification of a class in the face of evidence showing that many members lack Article III standing, the Sixth Circuit would wade into a split among sister circuits. *See In re Deepwater Horizon*, 739 F.3d 790, 800-01 (5th Cir. 2014) *cert. denied sub nom. BP Exploration & Prod. Inc. v. Lake Eugenie Land & Dev., Inc.*, 135 S.Ct. 754 (2014). As the Fifth Circuit recently acknowledged, circuits have followed two distinct approaches in evaluating standing for class certification purposes, and some circuits have taken internally conflicting approaches. *Id*. Several circuits have held that, as long as the class representatives have standing, Article III is satisfied. *See, e.g., In re Deepwater Horizon*, 739 F.3d at 800-02; *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 306–07 (3d Cir. 1998). Others have held that "no class may be certified that contains members lacking Article III standing." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006); *see also Halvorson v. Auto-Owners Ins. Co.*, 718 F.3d 773, 778 (8th Cir. 2013) (reversing certification order because record did not indicate that all class members could show Article III standing). The District Court relied upon the Ninth Circuit in holding that "'[i]n a

49

class action, standing is satisfied if at least one named plaintiff meets the requirements.'" (Order, RE 140, Page ID # 6424; quoting *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 (9th Cir. 2011).)  However, the Ninth Circuit later held *in Mazza v. American Honda Motor Co.* that "[n]o class may be certified that contains members lacking Article III standing." 666 F.3d 581, 594 (9th Cir. 2012). Had the District Court properly denied class certification because the classes are overbroad, it could have avoided walking this Court into a circuit split.  However, in certifying a class despite evidence that many absent class members lack standing, the District Court's decision raises serious constitutional concerns.

## IV. THE DISTRICT COURT CERTIFIED FIVE CLASSES THAT ARE NOT ASCERTAINABLE BECAUSE THERE IS NO RELIABLE AND FEASIBLE METHOD FOR IDENTIFYING CLASS MEMBERS.

Finally, even if Plaintiffs could meet the Rule 23 requirements, their class cannot be certified for yet another reason: the class is not "ascertainable" because Plaintiffs have failed to demonstrate that there is a "reliable" and "administratively feasible" method for *identifying* the class members.  *Young*, 693 F.3d at 539; *see also Romberio v. UNUMProvident Corp.*, 385 Fed. App'x 423, 431 (6th Cir. 2009); *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349 (3d Cir. 2013).  Though not an explicit Rule 23 requirement, the ascertainability standard mandates "that identifying class members is a manageable process that does not require much, if any, individual factual inquiry."  William B. Rubenstein, Newberg on Class

50

Actions § 3:3 (5th ed. 2011).  Accordingly, the trial court at class certification is to determine how the class members will be identified.  *See* Fed. R. Civ. P. 23 Advisory Committee Note, 2003 Amendments.  "If class members are impossible to identify" without having to rely on their "say so" or "extensive and individualized fact-finding," then a class action is inappropriate.  *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593-94 (3d Cir. 2012).

Here, Plaintiffs purport to define the five classes as all Align purchasers within a given time frame and in the five identified states.  But Plaintiffs fail to demonstrate any reliable and feasible way to identify those persons.  P&G does not retail Align (except for a limited number of purchases through its website), and it does not have the names or identities of customers who purchased Align from a vast array of retailers.  (Penagos Decl., RE 122, ¶¶ 4, 11, SA205, 206.)  Most individuals would not have saved receipts or proof of purchase—notably, none of the Plaintiffs did.  "[I]f class members cannot be ascertained from a defendant's records," Plaintiffs must demonstrate that there is a "'reliable, administratively feasible alternative,'" beyond relying on individuals' bare affidavits.  *Carrera v. Bayer Corp.*, 727 F.3d at 304 (citation omitted).  Plaintiffs have provided no such method here.

This case is nearly identical to *Carrera v. Bayer Corp.*, where the Third Circuit vacated a district court's class certification decision for precisely this

reason. *Id.* at 304-05. There, like here, Plaintiffs brought a false advertising claim against a product's manufacturer on behalf of all purchasers of Bayer's "WeightSmart" dietary supplements in Florida. Because the supplements were sold in retail stores, "Bayer ha[d] no list of purchasers," and, as here, purchasers were "unlikely to have documentary proof of purchase." *Id.* at 304. The court also rejected the plaintiffs' proposal to rely on "potential class members' say so," through the use of affidavits because that would raise a serious due process problem. *Id.* at 304-06.

The District Court overlooked these ascertainability concerns, relying on this Court's decision in *Young v. Nationwide Mutual Insurance Co.*, 693 F.3d at 538-39. (Order, RE 140, Page ID # 6426.) That case, however, is not analogous. In *Young*, the defendants had records of the class members' identifies and the amount they were incorrectly charged. 693 F.3d at 539. Though the defendants complained that they would have to go through a large number of individual files to identify absent class members, the Sixth Circuit reasoned that "the need to manually review files is not dispositive" lest defendants escape "class-wide review due solely to the size of their businesses or the manner in which their business records were maintained." *Id.* at 540 (quotation marks and citation omitted). By contrast, P&G has no records of the class members who purchased Align in retail stores at all, much less in the five identified states during the class period.

Without reliable records, the District Court speculated that "claim forms and affidavits" could be utilized to determine class membership, with claims administrators or special masters to review for fraud. (Order, RE 140, Page ID # 6428-29.) Leaving class identification up to an individual's own "say so," however, has multiple problems. *Hayes*, 725 F.3d at 355. First, it invites fraud. Neither Plaintiffs nor the District Court specified how fraud could be eliminated (or even minimized) through so-called "management tools." (Order, RE 140, Page ID # 6429.) *See Carrera*, 727 F.3d at 311-12 ("Mere assurances that a model can screen out unreliable affidavits will be insufficient.").

Moreover, determining class membership solely based on affidavits, "without further indicia of reliability, [has] serious due process implications." *Hayes*, 725 F.3d at 355 (quotation marks and citation omitted). If this were an individual claim, Plaintiffs would have to prove that they purchased Align, and P&G would have a chance to challenge that showing. That opportunity to challenge is even more important where, as here, the three named Plaintiffs cannot even remember how many packages they purchased, or when, indicating the massive due process problems that would lie ahead for five statewide classes. (Def's. Opp'n, RE 122, SA141, 146.) *See Carrera*, 727 F.3d at 309 (due process concerns "especially true where the named plaintiffs' deposition testimony suggested that individuals will have difficulty accurately recalling their

53

purchases").  "[A] class action cannot be certified in a way that eviscerates [due process]," which is why making sure class members can be reliably identified is so crucial.  *Id*. at 307.  *See also In re Clorox Consumer Litig.*, 301 F.R.D. 436, 440 (N.D. Cal. 2014) (denying certification because "[a]ffidavits from consumers alone are insufficient to identify members of the class"); *Karhu v. Vital Pharms., Inc.*, No. 13-60768, 2014 U.S. Dist. LEXIS 26756, at *7-8 (S.D. Fla., Mar. 3, 2014) (same); *Sethavanish v. ZonePerfect Nutrition Co.*, No. 12-2907-SC, 2014 U.S. Dist. LEXIS 18600, at *17 (N.D. Cal., Feb. 13, 2014) (no certification because plaintiff yet to present feasible method for determining class membership).

The District Court further dismissed the problem of ascertaining class members by reasoning that P&G's interest would be protected as long as members' claims did not exceed P&G's aggregate liability.  (Order, RE 140, Page ID # 6445.)[8]  But, as the Third Circuit explained, fraudulent or inaccurate claims paid based on "affidavits will dilute the recovery of true class members."  *Carerra*, 727 F.3d at 310.  And P&G has an obvious interest "in ensuring it pays only legitimate

---

[8] The undisputed evidence, however, shows that damages cannot be calculated on a statewide basis through P&G's sales data.  P&G sells consumer products to large retailers on a nationwide basis and does not track sales on a state-by-state basis.  (Penagos Decl., RE 122, ¶¶ 3-14, SA204-07.)  Hence, there is no reliable way to determine an aggregate liability cap for the five classes.

claims," lest true class members do not adequately recover and argue they are not bound by the judgment. *Id.* (citing *Hansberry v. Lee*, 311 U.S. 32 (1940)). Consequently, even if the Court adopts Plaintiffs' Rule 23 theories (which it should not), this Court cannot turn a blind eye to the ascertainability problems inherent in this class.

## **CONCLUSION**

For these reasons, P&G respectfully requests that the Court reverse the District Court's grant of class certification.

Dated:          January 20, 2015                  Respectfully submitted,

                                                   s/Brian J. Murray

D. Jeffrey Ireland                                 Brian J. Murray
FARUKI IRELAND & COX P.L.L.                        JONES DAY
201 E. Fifth Street, Suite 1420                    77 West Wacker
Cincinnati, OH 45202                               Chicago, Illinois  60601-1692
(513) 632-0300                                     (312) 269-1570

Joanne Lichtman                                    Chad A. Readler
BAKER & HOSTETLER LLP                              Rachel Bloomekatz
3200 PNC Center                                    JONES DAY
1900 E. 9th Street                                 325 John H. McConnell Blvd.
Cleveland, OH 44114                                Suite 600
(216) 621-0200                                     Columbus, Ohio  43215
                                                   (614) 469-3939

*Attorneys for Appellant, The Procter & Gamble Company*

<u>**CERTIFICATE OF COMPLIANCE**</u>

Counsel for Appellant hereby certifies that the foregoing brief complies with the type-volume limitation provided in Federal Rule of Appellate Procedure 32(a)(7)(B). The foregoing brief contains 12,980 words in Times New Roman (14-point) proportional type. The word processing software used to prepare this brief was Microsoft Office Word 2007.

Dated:        January 20, 2015                 Respectfully submitted,

                                               s/Brian J. Murray
D. Jeffrey Ireland                             Brian J. Murray
FARUKI IRELAND & COX P.L.L.                    JONES DAY
201 E. Fifth Street, Suite 1420                77 West Wacker
Cincinnati, OH 45202                           Chicago, IL  60601-1692
(513) 632-0300                                 (312) 269-1570

Joanne Lichtman                                Chad A. Readler
BAKER & HOSTETLER LLP                          Rachel Bloomekatz
3200 PNC Center                                JONES DAY
1900 E. 9th Street                             325 John H. McConnell Blvd.
Cleveland, OH 44114                            Suite 600
(216) 621-0200                                 Columbus, OH  43215
                                               (614) 469-3939

*Attorneys for Appellant, The Procter & Gamble Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of January, 2015, I electronically filed

with the Clerk's Office of the United States Court of Appeals for the Sixth Circuit

this Opening Brief for Appellant The Procter & Gamble Company, and further

certify that opposing counsel will be notified of, and receive, this filing through the

Notice of Docket Activity generated by this electronic filing.

Dated:        January 20, 2015              Respectfully submitted,

D. Jeffrey Ireland                          s/Brian J. Murray
FARUKI IRELAND & COX P.L.L.                 Brian J. Murray
201 E. Fifth Street, Suite 1420             JONES DAY
Cincinnati, OH  45202                       77 West Wacker
(513) 632-0300                              Chicago, IL  60601-1692
                                            (312) 269-1570
Joanne Lichtman
BAKER & HOSTETLER LLP                       Chad A. Readler
3200 PNC Center                             Rachel Bloomekatz
1900 E. 9th Street                          JONES DAY
Cleveland, OH  44114                        325 John H. McConnell Blvd.
(216) 621-0200                              Suite 600
                                            Columbus, OH  43215
                                            (614) 469-3939

*Attorneys for Appellant, The Procter & Gamble Company*

**ADDENDUM**

**APPELLANT'S DESIGNATION
OF RELEVANT DISTRICT COURT DOCUMENTS**

Defendant-Appellant The Procter & Gamble Company, pursuant to 6th Cir.

R. 28(c) and 30(g)(1), hereby designates the following District Court documents,

which are cited in Appellant's Brief.  The District Court documents that were filed

under seal in the District Court are noted below, and included in the Sealed

Appendix ("SA") at the indicated SA page range.

| RECORD ENTRY | DESCRIPTION OF ITEM | PAGE ID NUMBER RANGE |
|---|---|---|
| 85 | Second Amended Class Action Complaint | 960-989 |
| 91 | Stipulated Protective Order and Confidentiality Agreement | 049-1072 |
| 100 | Supplemental Stipulated Protective Order | 1156-1163 |
| 108-8 | Declaration of Srinadh Komanduri, M.D., M.S., in Support of Plaintiffs' Motion for Class Certification | 1594-1622 |
| 109 | Plaintiffs' Motion and Memorandum in Support of Motion for Class Certification (*Filed Under Seal*) | SA 15-63 |
| 115 | Declaration of Daniel J. Merenstein, M.D., in Support of The Procter & Gamble Company's Memorandum in Opposition to Plaintiffs' Motion for Class Certification | 4291-4345 |
| 122 | Defendant The Procter & Gamble Company's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (*Filed Under Seal*) | SA 64-150 |

1

| 122 | Declaration of Michael R. Solomon, Ph.D., in Support of The Procter & Gamble Company's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (*Filed Under Seal*) | SA 151-197 |
| --- | --- | --- |
| 122 | Declaration of David Lacy in Support of The Procter & Gamble Company's Memorandum in Opposition to Plaintiffs' Motion For Class Certification (*Filed Under Seal*) | SA 189-203 |
| 122 | Declaration of Monica Penagos in Support of The Procter & Gamble Company's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (*Filed Under Seal*) | SA 204-209 |
| 133 | Deposition Transcript of Srinadh Komanduri, M.D., MS | 5740-5785 |
| 136 | Plaintiffs' Reply in Support of Motion for Class Certification (*Filed Under Seal*) | SA 210-278 |
| 140 | Order Granting Plaintiffs' Motion for Rule 23 Class Certification | 6415-6452 |
| 141 | Transcript of Proceedings Before the Honorable Timothy S. Black: Motion to Certify as a Class Action | 6453-6563 |